**In re Anonymous No. 42 D.B. 79**

Disciplinary Board Docket no. 42 D.B. 79.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SLOANE, *Member,* March 29, 1994—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [    ], was suspended for a period of three years by order of the Pennsylvania Supreme Court dated December 23, 1981. The three-year period ran from the date of petitioner's immediate suspension from the practice of law, which became effective on April 30, 1981. His suspension was based upon two bribery schemes. The first involved a conspiracy between petitioner and his partner, [A], Esq., together with a Republican Party official in [    ] County. The parties arranged for payments to the Republican Party in exchange for building permits in [    ] County for a client of petitioner to erect an [B] plant. The second scheme involved the same parties, who arranged another payoff to the Republican Party for the purpose of placing the mother of one of petitioner's clients in a public nursing home in [    ] County.

On August 20, 1992, a petition for reinstatement was filed, together with a reinstatement questionnaire. A reinstatement hearing was held on November 16, 1992 before Hearing Committee [    ], chaired by [    ], Esq., and included [    ], Esq., and [    ], Esq. Based upon a finding that petitioner failed to display the requisite degree of remorse, the Hearing Committee recommended the reinstatement be denied in a report filed with the board on April 5, 1993. Office of Disciplinary Counsel did not file exceptions to this recommendation.

On April 21, 1993, counsel for petitioner, the late [C] was granted an extension in which to file a brief on exceptions. Petitioner's brief was filed on May 11, 1993,

in which oral argument was requested, and Office of Disciplinary Counsel filed a letter-brief in response on May 12, 1993. Oral argument was heard on June 7, 1993 by a three-member panel of the board, which was chaired by Leonard A. Sloane, Esq., and included Robert J. Kerns, Esq., and Berle M. Schiller, Esq.

During oral argument, counsel for petitioner admitted that he made a mistake at the former hearing in that he was not aware that his client would be required to fulfill a standard of remorse. Counsel also acknowledged that he had never handled a disciplinary matter. Thereafter, the case was referred to the board for adjudication at a meeting held on June 16, 1993. By order of the Disciplinary Board dated August 15, 1993, the matter was reopened and remanded to the Hearing Committee for additional testimony.

A second reinstatement hearing was held on August 24, 1993. [D], Esq. entered his appearance on behalf of petitioner. The Hearing Committee filed a supplemental report on October 15, 1993, and recommended the reinstatement of petitioner. Office of Disciplinary Counsel did not file exceptions to the report. The matter was adjudicated at the December 3, 1993 meeting of the Disciplinary Board, which concurred with the Hearing Committee's recommendation that petitioner be reinstated.

## II. FINDINGS OF FACT

(1) Petitioner, [     ] was born in 1941 and was admitted to the practice of law in Pennsylvania in 1966. His current address is [     ].

(2) Petitioner was suspended from the practice of law in 1981 for two incidents which occurred in 1975. (N.T. 64.) He could have applied for reinstatement as early as 1984. (N.T. 9.)

(3) Upon suspension, petitioner formed a Pennsylvania business corporation, [E] which engaged in the air freight

476

transportation business in [    ], [    ], [    ] and [    ]. (N.T. 8.)

(4) Petitioner did not apply for reinstatement in 1984 because he was heavily involved in his business and felt that he owed an obligation to his 50 employees. (N.T. 9, 10.)

(5) Petitioner was forced to shut down his business in December 1990 due to financial constraints in that industry. (N.T. 9.) Petitioner also decided that he wanted to resume the practice of law at that time. (Reinstatement questionnaire at 11.)

(6) From 1981 until the present, petitioner has not been convicted or charged with any criminal offenses. (N.T. 10.)

(7) Petitioner's reinstatement was initially denied because the Hearing Committee believed that he did not display the requisite degree of remorse.

(8) In oral argument held on June 7, 1993, petitioner's original attorney, [C], Esq. admitted that he failed to address the issue of remorse in the reinstatement hearing which was held on November 16, 1992. (N.T. oral argument 4-7.)

(9) At the second hearing which was held on August 24, 1993, petitioner was represented by [D], Esq. Attorney [D] replaced [C], who died approximately three weeks prior to that date. (N.T. 59, 60.)

(10) Petitioner accepted the board's conclusion that he actively participated in the bribe. (N.T. 23.)

(11) At the additional hearing, petitioner admitted that he was not merely making excuses for his conduct and displayed a significant degree of remorse for his prior actions. (N.T. 63-66.) He also expressed remorse in a separate statement.

(12) Petitioner presented four character witnesses at the hearing held on November 16, 1992. All were former

clients or employees and all held petitioner in the highest esteem as an attorney.

(13) Petitioner has demonstrated competency and learning in the law by completing the Pennsylvania Basic Practice Course held at [    ] University from August 5-7, 1992. In addition, he has read numerous publications in the law, particularly in the field of transportation law. (Reinstatement questionnaire at 14-15, N.T. 12.)

(14) Finally, petitioner acknowledged that his prior conduct damaged his personal and professional life, as well as the lives of his family and friends. He testified that he would avoid such conduct in the future. (N.T. 41, 64-66.)

### III. DISCUSSION

The primary objective of the disciplinary system is to determine whether the attorney possesses the requisite fitness to practice law and to protect the public from unfit attorneys. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). In this fashion, the integrity of the legal system is maintained. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

According to Pa.R.D.E. 218(a), an attorney who is suspended for a period exceeding one year may not resume practice until reinstated by order of the Pennsylvania Supreme Court. Pa.R.D.E. 218(a). In order to be reinstated, an attorney must prove by clear and convincing evidence that the attorney possesses the moral qualifications, competency, and learning in the law required for admission to practice law in the Commonwealth, and that the resumption of the practice of law will be neither detrimental to the integrity and stand-

ing of the bar or the administration of justice nor subversive of the public interest. Pa.R.D.E. 218(c)(3)(i).

Reinstatement proceedings form a searching inquiry into an attorney's present technical and moral ability to resume the practice of law. *Philadelphia Newspapers v. Disciplinary Board of the Supreme Court of Pennsylvania,* 468 Pa. 382, 363 A.2d 779 (1976). The acts which gave rise to the disbarment are considered, as well as the nature, extent, and success of the rehabilitative efforts made by the attorney during the period of disbarment. *Id.* at 385-386, 363 A.2d at 781. Specifically, a "qualitative period of rehabilitation" combined with a "quantitative period of time" is necessary. *In re Anonymous No. 26 D.B. 81,* 7 D.&C.4d 260, 272-273 (1990). Additional factors include the length of time that has passed since the acts were committed, as well as a clear and convincing showing of remorse on behalf of the petitioner. *Id.*

Application of the above law to the facts reveals that petitioner has met the requirements for reinstatement by a showing of clear and convincing evidence. Petitioner has been inactive since his suspension became effective in 1981. In one case involving only seven years of inactivity following disbarment, the board considered that length of time to be "one-half of the formula for reinstatement." *In re Anonymous No. 26 D.B. 81, supra* at 273. In contrast, petitioner in the instant case has been inactive for 13 years.

Even though petitioner did not resume work directly connected to the legal field, he started a sizable company which handled business in air freight transportation, which served four major cities. In addition, he supervised 50 employees. Moreover, this occupation involved legal issues in the field of air transportation. In a similar case, a long term of inactive status did not bar another

attorney from reinstatement because his business activities involved complex issues of the law. *In re Anonymous No. 120 D.B. 88,* 6 D.&C.4d 1 (1989).

In addition, petitioner produced evidence of moral qualifications, competency, and learning in the law in the form of testimony, documentary evidence, and witnesses. The record establishes that the Hearing Committee recommended denial of petitioner's original reinstatement, but that was attributable to the fault of his attorney, who acknowledged that he had failed to address the issue of remorse. The board felt that this was unfortunate and remanded the case back to the Hearing Committee on the issue of remorse. After the second hearing, the Committee concluded that petitioner displayed the requisite degree of remorse to qualify for reinstatement.

In addition, the conduct for which petitioner was suspended was attributable to two isolated incidents which occurred nearly 20 years ago. The record does show that petitioner has not been engaged in any misconduct since then, and that his prior conduct did not harm any of his clients. Finally, petitioner submitted evidence of his moral qualifications through the testimony of four witnesses, all of whom were former clients or employees of petitioner. Each testified that petitioner was trustworthy and dedicated to serving his clients and the community. They said that he would be an asset if he was allowed to return to the profession.

In the reinstatement questionnaire, petitioner listed the courses which he had taken in preparation for reinstatement. Hence, he made a conscious decision to return and took the matter seriously. Petitioner also showed that he has read approximately 32 publications in the legal field and has acquired knowledge of current

legal developments in the field of transportation law through operation of his business.

In sum, petitioner has satisfied every requirement for reinstatement. The board notes that he has led a productive life since his suspension. Petitioner has demonstrated that if he is allowed to return to the practice of law, he would not only be a productive member of the bar, but of the community as well.

## IV. RECOMMENDATION

For the foregoing reasons, the board recommends that the petition for reinstatement for [petitioner] be granted. The board further recommends that petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition, pursuant to Pa.R.D.E. 218(e).

Board Members Lieber and Marroletti did not participate in the adjudication.

## ORDER

And now, June 10, 1994, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated March 29, 1994, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Frank J. Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket no. 94 R1800, due to the unavailability of Mr. Justice Rolf Larsen, see no. 127 Judicial Administration Docket no. 1, filed October 28, 1993.